UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENZEL DEMAR CRISP, | No. 2: 15-cv-0938 KJN P |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| DAVE DAVEY, | |
| Respondent. | |

I. Introduction

Petitioner is a state prisoner, proceeding through counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2010 convictions for discharging a firearm from a motor vehicle, assault with a semi-automatic firearm, use of a semi-automatic firearm, personal infliction of great bodily injury, and personal discharge of a firearm causing great bodily injury. Petitioner is serving a sentence of 30 years to life.

Pending before the court is respondent's motion to dismiss on the grounds that four claims raised in the amended petition are barred by the statute of limitations. (ECF No. 25.) For the reasons stated herein, the undersigned recommends that respondent's motion be denied.

II. Factual Background

In order to put the pending motion in context, the undersigned herein sets forth the factual background of petitioner's offense contained in the opinion of the California Court of Appeal:

1

In this unprovoked and random drive-by shooting with a semiautomatic handgun, the two teenage defendants both testified that the other one was the shooter. A jury convicted 17–year–old Denzel Demar Crisp, the passenger, of discharging a firearm from a motor vehicle and assault with a semiautomatic firearm, but failed to reach a verdict on the attempted murder charge. The related gun and great bodily injury enhancements were found to be true. Eighteen-year-old Steven Brown, Jr., the driver, was convicted of assault with a semiautomatic firearm, knowingly permitting another person to discharge a firearm from his vehicle, and carrying a concealed firearm. The related firearm enhancement was also found to be true.

Neither boy had a prior record. Whereas the trial court sentenced Crisp to state prison for an aggregate term of 30 years to life, it sentenced Brown to seven years eight months. On appeal, defendants challenge several jury instructions, the sufficiency of the evidence, and, in Crisp's case, the constitutionality of his sentence. We affirm.

FACTS

On the night of December 18, 2009, defendants had difficulty finding a party hosted by Jennifer Ly. Thinking they had found it, they walked up to a group of people standing outside a residence at what turned out to be a family 21st birthday party. They were told there was no Jennifer at the party and they left. One guest testified that Brown appeared to be "[a] little angry." No one else, including defendants, testified there was any altercation, any unkind or agitated interaction, or any hard feelings. Defendants were simply at the wrong party.

They got back in their car. There is some dispute as to the route they then took, but they ended up in front of the same party with their lights off, and as the driver slowed down, witnesses saw an arm stick out of the passenger window and heard two or three gunshots. Andrew Tapalla had just arrived at the party when he was shot in the buttocks. Emergency personnel took him to the hospital, where he was given morphine to control the pain, but the bullet was not removed. He missed four days of work.

Defendants fled the scene. Shocked that Crisp had just fired a gun out of the window of his car, Brown testified he asked Crisp, "What the fuck are you doing?" He did not know Crisp had fired into a group of people or that anyone had been hit. He planned to take Crisp home. Crisp, who testified that it was he who was shocked that Brown reached in front of him to shoot out of the passenger window, claimed they had no conversation at all. Both defendants testified it was not their gun, they had never shot a gun before, and they did not shoot it at the group of partygoers after they left.

Several witnesses testified that someone fired the shots from the passenger side of a Ford Mustang. At least two witnesses testified

> they saw an arm sticking out of the window, and one testified it was out at least as far as his elbow.
>
> Brown pulled into a gasoline station with the police in hot pursuit. He testified that after he parked he asked Crisp to hand him the gun because he was afraid of what Crisp would do with it. He planned to turn it over to the police. Although he testified he had never owned or used a gun before, he saw a small button on the bottom of the gun, depressed it, and removed the magazine. But he then reloaded the gun, placed it in his waistband, and got out of the car.
>
> A police officer testified that he asked Brown if he had a gun, and Brown shook his head to indicate he did not. Brown denied the police officer had asked him. Rather, according to Brown, the police officers threw him against a police car, banged his head into the car, and yelled at him. In the process, the gun fell from his left pant leg to the ground. Officers found a .25–caliber spent cartridge casing fired by the gun retrieved from Brown in the space between the center console and the front passenger seat.
>
> Crisp testified he did not know Brown was armed that night until he saw him pull a gun out of the pocket of his peacoat. Because the night was so cold, he asked Brown if he could borrow some gloves. He testified that he wore the gloves all night, including while he was texting Jennifer and his mother.
>
> A criminalist testified that both Brown and Crisp tested positive for gunshot residue. From the testing he conducted, the criminalist found more on Crisp's hand than on Brown's, but he did not do a complete reading of Brown's sample. Based on the gunshot residue evidence, it could not be determined who had fired the gun.

People v. Brown, 2013 WL 5978681 at *1-2 (2013).

III. Background

On April 29, 2015, petitioner filed the original petition and a motion to stay in order to exhaust additional claims in state court. (ECF Nos. 1, 2). On May 15, 2017, the court granted petitioner's motion to stay pursuant to Rhines v. Weber, 544 U.S. 269 (2005). On June 20, 2016, petitioner filed an amended petition. (ECF No. 12.) On December 2, 2016, respondent filed the pending motion to dismiss. (ECF No. 25). On February 15, 2017, petitioner filed his opposition. (ECF No. 32.)

The original petition raised the following claims. In claim one, petitioner argued that his sentence violated the Eighth Amendment. (ECF No. 1 at 37-49.)

In claim two, petitioner alleged eleven grounds of ineffective assistance of trial counsel. (Id. at 49.) First, petitioner alleged that counsel was ineffective for failing to investigate and

3

obtain eyewitness and forensic expert witnesses. (Id. at 52.) Petitioner argued that an eyewitness expert consulted with by habeas counsel would have been able to raise serious doubts about the reliability of eyewitness testimony regarding the shooting. (Id. at 57-60.) Petitioner also argued that his trial counsel retained a firearms expert who could have testified that it was more likely that the gun was fired from inside the car rather than outside the car, suggesting that petitioner's co-defendant fired the gun. (Id. at 65-66.) Petitioner argued that his trial counsel was ineffective for failing to call the retained firearms expert as a witness. (Id. at 66-67.)

Second, petitioner argued that his trial counsel was ineffective for failing to investigate, preserve and introduce evidence of cell phone records and the phones, belonging to petitioner, his mother and Jennifer Ly. (Id. at 69.) Petitioner argues that this evidence would have corroborated petitioner's testimony that he was texting at the time the shots were fired. (Id.)

Third, petitioner argued that his trial counsel was ineffective for failing to communicate with and advise him effectively during plea negotiations. (Id. at 71.) Petitioner argued that trial counsel failed to advise him that if convicted, he would face a mandatory term of 5 years plus 25 years to life, run consecutively, after the prosecution amended the charges. (Id. at 72.) Petitioner also argued that trial counsel failed to inform him of the prosecution's plea offer. (Id. at 73-74.)

Fourth, petitioner argued that trial counsel was ineffective in his opening statement for promising expert opinion evidence that he never introduced, conceding factual issues that eviscerated co-defendant Brown's motive to shoot, conceding petitioner's culpability, for confusing petitioner and co-defendant Brown with one another, and for failing to articulate a theory of defense. (Id. at 74-78.)

Fifth, petitioner argued that trial counsel was ineffective for failing to argue the appropriate evidentiary bases, both statutory and constitutional, for admission of the testimony of Odgen Shipman. (Id. at 79-99.) Shipman, a mutual friend of petitioner and co-defendant Brown, could have testified about Brown's fascination with guns, a previous incident where Brown stole guns, and his penchant for lying. (Id. at 79.)

Sixth, petitioner argued that trial counsel was ineffective for failing to prepare petitioner to testify and then compounding the harm by locking him into a false statement on direct

4

examination. (Id. at 100-05.)

Seventh, petitioner argued that trial counsel was ineffective for failing to object to witness examinations by the prosecutor and attorney Staten, who represented Brown. (Id. at 105-10.) Eighth, petitioner argued that trial counsel was ineffective for failing to develop and argue a theory of the case in his closing argument. (Id. at 110-23.) Ninth, petitioner argued that trial counsel was ineffective for failing to object to Staten's misstatements about the witnesses' testimony. (Id. at 123-26.) Tenth, petitioner argued that trial counsel was ineffective for failing to effectively argue that petitioner's sentence of 30 years to life violated California's prohibition on cruel or unusual punishment. (Id. at 126.). Eleventh, petitioner argued that trial counsel was ineffective for failing to argue that petitioner's sentence violated the federal constitutional ban against cruel and unusual punishment. (Id. at 145-47.)

In the motion to stay, petitioner stated that his ineffective assistance of counsel claim, including all eleven subparts, was unexhausted. (Id. at 7.)

After the court granted the motion to stay, petitioner filed a habeas corpus petition in the Sacramento County Superior Court on June 1, 2015. (Respondent's Lodged Document 4.) The Superior Court denied this petition on July 22, 2015. (Respondent's Lodged Document 5.) Petitioner filed a habeas corpus petition in the California Court of Appeal on September 29, 2015. (Respondent's Lodged Document 6.) The California Court of Appeal denied this petition on December 14, 2015. (Respondent's Lodged Document 7.) Petitioner filed a habeas corpus petition in the California Supreme Court on January 1, 2016. (Respondent's Lodged Document 8.) The California Supreme Court denied this petition on April 20, 2016. (Respondent's Lodged Document 9.)

On May 19, 2016, petitioner filed a motion in this court to lift the stay. (ECF No. 10.) On May 20, 2016, the undersigned granted the motion to lift the stay and ordered petitioner to file an amended petition within thirty days. (ECF No. 11.)

Petitioner filed the amended petition on June 20, 2016. (ECF No. 12.) The amended petition raises six claims. Claim one of the amended petition raises all of the ineffective assistance of counsel claims raised in the original petition except for subclaim 7, alleging that trial

5

counsel was ineffective for failing to object to the witness examinations by the prosecutor and Staten. The amended petition raises one new claim of ineffective assistance of counsel, alleging that trial counsel was ineffective for failing to ask the trial court to present petitioner's case and closing argument after co-defendant Brown's. (ECF No. 12 at 143-45.)

Claim two of the amended petition alleges that petitioner's sentence violates the Eighth Amendment. (Id. at 170-78.) Claim three alleges a claim based on Brady v. Maryland, 373 U.S. 83 (1963). (Id. at 178-81.) Claim four alleges cumulative error based on ineffective assistance of counsel and Brady violations. (Id. at 181-84.) Claim five alleges ineffective assistance of appellate counsel based on appellate counsel's failure to argue that trial counsel was ineffective for failing to argue that petitioner's sentence violates the California prohibition on cruel or unusual punishment. (Id. at 184-85.) Claim six alleges a freestanding actual innocence claim. (Id. at 164-89.)

IV. Statute of Limitations

A. Calculation of Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. This statute of limitations provides that,

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody, pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1).

The California Supreme Court denied petitioner's petition for review on January 29, 2014. (Respondent's Lodged Document 3.) Petitioner's conviction became final 90 days later on April 29, 2014, when the period for filing a petition for writ of certiorari with the United States Supreme Court expired. See Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999). The one year limitations period commenced running the following day, i.e., April 30, 2014. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001). Petitioner had one year from that date to file a timely federal petition.

Because the original petition was filed on April 29, 2015, i.e., the last day of the limitations period, respondent concedes that the claims raised in the amended petition that were raised in the original petition are timely.[1]

Respondent argues that the four new claims raised in the amended petition, i.e., Brady error, ineffective assistance of appellate counsel, cumulative error and actual innocence, are time barred because the amended petition was filed after the limitations period. Petitioner is not entitled to statutory tolling with respect to these new claims because he did not file state petitions exhausting these claims until after the statute of limitations ran. See 28 U.S.C. § 2244(d)(2); Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (filing a state habeas petition after the AEDPA statute of limitations had expired "resulted in an absolute time bar").

In the opposition, petitioner does not argue that he is entitled to equitable tolling. See Holland v. Florida, 560 U.S. 631, 645 (2010) (the one year statute of limitations for filing a habeas petition may be equitably tolled if extraordinary circumstances beyond a prisoner's control prevent the prisoner from filing on time).

Both parties agree that the new claims raised in the amended petition are time barred unless they relate back to the claims raised in the original petition.

---

[1] Respondent does not argue that new ineffective assistance of counsel claim raised in the amended petition is not timely.

B. Relation Back

A habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Under Federal Rule of Civil Procedure 15(c), a petitioner may add an otherwise untimely claim to his habeas petition if it relates back to a timely-filed claim. Rule 15(c) provides, in relevant part, that an amendment relates back to a timely-filed claim when the newly-asserted claim "arose out of the conduct, transaction, or occurrence set out" in the previous filing. Fed. R. Civ. P. 15(c)(1)(B). As the Supreme Court explained in Mayle v. Felix, 545 U.S. 644 (2005), Rule 15(c) permits relation back only when new claims "arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." Id. at 657 (internal quotation marks omitted).

The "time and type" language in Mayle "refers not to the claims, or grounds for relief," but "to the facts that support those grounds." Nguyen v. Curry, 736 F.3d 1287, 1297 (9th Cir. 2013) (emphasis in original).

1. Brady Error

In claim three of the amended petition, petitioner alleges that after his arrest, the police downloaded the contents of his cell phone to a compact disk. (ECF No. 12 at 178.) Petitioner alleges that despite the fact that the disk would have corroborated petitioner's testimony at trial that he was texting when the shots were fired, the prosecutor did not provide a copy of the disk to the defense. (Id.) Petitioner argues that the failure of the prosecutor to disclose the disk violated Brady v. Maryland, 373 U.S. 83 (1963). (Id.) Prior to trial, the prosecutor provided only a copy of the inventory of items seized pursuant to petitioner's arrest, which included a reference to the cell phone data retrieval. (Id.)

In the opposition to the pending motion, petitioner argues that the Brady claim relates back to the claim raised in his original petition alleging that trial counsel was ineffective for failing to investigate, preserve and introduce the cell phone evidence including the cell phone records and the actual phones belonging to petitioner, petitioner's mother and Jennifer Ly. (ECF No. 1 at 69.) In the original petition, petitioner alleged that trial counsel's investigator recognized

8

the significance of the cell phone evidence. (ECF No. 1 at 70.) Petitioner alleged that the investigator discussed with petitioner the need to retrieve the messages and texts from petitioner's phone from the night of the shooting. (Id.) Petitioner alleged that neither trial counsel nor his investigator retrieved the messages, the texts, or petitioner's phone. (Id.) In his declaration submitted in support of the original (and amended) petition, trial counsel states that, "[e]ven though I could have had access to [petitioner's] cell phone, as well as those of Ms. Ly and Ms. Williams, I did not obtain those phones or undertake an investigation to confirm those text messages and the times they were sent." (ECF No. 1-2 at 6.)

"[C]ourts generally have declined to find that a newly added claim related back when the original claim involved similar issues but was based on actions taken by different people." Whitehead v. Hedgpeth, 2013 WL 3967341, at *5 (N.D. Cal. July 31, 2013) (gathering cases); see also Schneider v. McDaniel, 674 F.3d 1144, 1151 (9th Cir. 2012) (noting "Schneider's original theory was based on trial counsel's alleged failures. His amended theory is based on the trial court's alleged errors.").

Here, petitioner's ineffective assistance of counsel and Brady claims involve alleged errors by different actors, i.e., trial counsel and the prosecutor. Additionally, the errors are distinct. In the claim alleging Brady error, petitioner alleges that the prosecutor failed to disclose the disk containing the contents of petitioner's cell phone, although the prosecutor identified the disk on an inventory of items seized from petitioner. In contrast, petitioner alleges that his trial counsel had knowledge of, and apparently access to, his cell phone, but failed to undertake an investigation to confirm when the text messages were sent. The Brady claim and the ineffective assistance of counsel claim do not arise from same core facts. For these reasons, petitioner's Brady claim does not relate back to the ineffective assistance of counsel claim raised in the original petition.[2] Thus, the Brady claim is not timely.

---

[2] The Ninth Circuit has held that where a defendant has enough information to be able to ascertain Brady material on his own, the prosecution has not suppressed the evidence. See United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991); see also United States v. Bond, 552 F.3d 1092, 1096 n. 4 (9th Cir. 2009) (quoting United States v. Dupuy, 760 F.2d 1492, 1502 n. 5 (9th Cir. 1985)) (suppression cannot occur within the meaning of Brady if the means of obtaining exculpatory evidence has been provided to the defense). If petitioner's counsel knew of the

### 2. Ineffective Assistance of Appellate Counsel

The amended petition alleges that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to effectively argue that petitioner's sentence violated the California prohibition on cruel or unusual punishment. The original petition raised a claim alleging that trial counsel was ineffective for failing to effectively argue that petitioner's sentence violated California's prohibition on cruel and unusual punishment.

In the opposition, petitioner relies on Nguyen v. Curry, 736 F.3d 1287 (9th Cir. 2013), in which the Ninth Circuit held that a claim alleging appellate counsel was ineffective for failing to raise a double jeopardy argument on direct appeal related back to the petitioner's claim that his rights were violated under the Double Jeopardy Clause, which in turn related back to the original petition and therefore was not barred by the one-year limitation period. 736 F.3d at 1296–97. The court observed that the "time and type" language in Felix refers not to the claims or grounds for relief but "to the facts that support those grounds." Id. at 1297. The court found that the original double jeopardy claim and the new claim alleging ineffective assistance of appellate counsel were "supported by a common core" of facts that were "simple, straightforward, and uncontroverted," and "clearly alleged in the original pleading." Id.

While petitioner's ineffective assistance of appellate and trial counsel claims involve different people, they are based on the same core facts: trial counsel's alleged failure to effectively argue that petitioner's sentence violated the California prohibition against cruel or unusual punishment. Based on the Ninth Circuit's reasoning in Nguyen, the undersigned finds that petitioner's ineffective assistance of appellate counsel claim relates back to the related ineffective assistance of trial counsel claim. Accordingly, petitioner's ineffective assistance of appellate counsel claim is timely.

### 3. Cumulative Error

Petitioner's claim alleging cumulative error is based on trial counsel's alleged ineffective assistance and his Brady claim. (ECF No. 12 at 181.) As discussed above, petitioner's Brady

---

possible exonerating information on petitioner's phone, and could have had access to the phone, as alleged in his declaration, then it is unclear how petitioner could succeed on his Brady claim.

claim is not timely. Accordingly, to the extent petitioner's cumulative error claim incorporates his timely ineffective assistance of counsel claims, it relates back to the original petition, and is timely. For the reasons discussed above, the cumulative error claim based on <u>Brady</u> error fails to relate to the claims raised in the original petition, and is not timely.

    4. <u>Actual Innocence</u>

In the amended petition, petitioner raises a freestanding actual innocence claim. <u>See</u> <u>Jones v. Taylor</u>, 763 F.3d 1242, 1246-47 (9th Cir. 2014) (Ninth Circuit has assumed a freestanding actual innocence claim is viable in the non-capital context).

The undersigned sets forth petitioner's argument in support of his actual innocence claim herein:

> Crisp has presented sufficient evidence to undermine the prosecution in his case and demonstrate that he is actually innocent of the charges of conviction and sentencing enhancements found true. The evidence indicating Crisp was the shooter was equivocal at best. No one saw who fired the gun from the Mustang. In the immediate aftermath of the shooting, witnesses reported seeing at most only the flash of shots fired in the dark. The forensic evidence admitted at trial also was a draw: the prosecution's expert witnesses were unable to tell who fired the weapon. Only Reyes's testimony at the preliminary examination, which he reiterated at trial, regarding seeing part of an arm extended out the passenger window at the time of the shooting and Brown's trial testimony pointed to Crisp as the shooter.

> The new evidence presented in this petition eviscerates the probative value or Reyes's testimony and what little credibility there was to begin with in Brown's testimony. There is a well-established body of scientific research regarding the fallibility of eyewitness testimony to the peripheral details of a stressful event such as a shooting. Observations regarding details such as an arm out of the window are particularly suspect when offered months after the shooting and in all likelihood are the result of reconstructed memory. Dr. Wells stated in his declaration that Reyes's supposed memory of the arm out the window was in all likelihood the product of a reconstructed memory and thus, had little to no probative value.

> This leaves only the observations of Tapalla, Salomon, and Meraz, which did not include an arm extended out the window, thus supporting the conclusion that the driver, and not the passenger, fired the weapon. Likewise, the report of forearms expert, Robert Venkus, whom [trial counsel] never introduced at trial, establishes the likelihood that Brown fired the weapon out the passenger window.

11

> In addition, Shipman's testimony that Brown admitted to participating in a burglary in which firearms were taken and purchasing a firearm with a co-worker and was generally obsessed with guns provides potent circumstantial evidence that Brown both owned and fired the weapon. This evidence, combined with Shipman's opinion that Brown was a liar, also impeaches Brown's testimony that he had no experience with firearms and thus, that he was not the shooter. Moreover, the numerous instances of ineffective assistance set forth in this petition, occurring at the hands of a trial lawyer who was visibly ill to the point of mental impairment and requiring hospitalization during the trial, vividly demonstrate the likelihood that Crisp is actually innocent.

(ECF No. 12 at 187-88.)

In the motion to dismiss, respondent argues that petitioner's actual innocence claim does not relate back to the claims raised in the original petition because it involves,

> the decisions and actions of a separate actor (Petitioner) at a much different time when the crimes were committed before the legal proceedings even began. These differences are significant because, as noted above, Habeas Corpus Rule 2(c) mandates that a "petition must *specify all the grounds for relief* available to the petitioner' and '*state facts* supporting each ground.'" Mayle, 545 U.S. at 656, 661. Surely, under this "stringent" standard, facts concerning a different attorney making a different decision at a different stage of the proceedings, as well as facts concerning petitioner's actions at the time the crimes were committed, cannot relate back to the original claims in this matter.

(ECF No. 25 at 7.)

In the opposition, petitioner argues that respondent has misconstrued his actual innocence claim. Petitioner argues that his actual innocence claim is based on his petitioner's status as a person who was wrongly convicted. Petitioner argues that it makes no sense to think of petitioner's own behavior as the source of the constitutional violation. The undersigned agrees with petitioner. Respondent's argument that petitioner's actual innocence claim cannot relate back to any of the claims raised in the original petition because it is based on petitioner's conduct is not accurate. See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

////

12

Petitioner argues that he is actually innocent based on the expert eyewitness and ballistic evidence that trial counsel failed to introduce. Petitioner also argues that the testimony of Shipman, who trial counsel was not able to call as a witness, demonstrates his actual innocence. Thus, petitioner's actual innocence claim arises from the same core facts as the ineffective assistance of counsel claims raised in the original petition, i.e., counsel failed to call expert witnesses and introduce the testimony of Shipman. Accordingly, petitioner's actual innocence claims relates back to claims raised in the original petition. Cf. Soler v. U.S., 2010 WL 5173858 at *4 (S.D.N.Y. 2010) (affirming order to deny amended habeas petition where new claim of actual innocence "asserts a new ground for relief supported by facts that differ in both time and type from a claim of ineffective assistance of counsel.") Accordingly, petitioner's actual innocence claim is timely.

### C. Miscarriage of Justice

Petitioner argues that the court may consider his time barred claim(s) pursuant to the miscarriage of justice exception to the statute of limitations.

In order to obtain relief from the statute of limitations, a petitioner claiming actual innocence must establish a miscarriage of justice under the standard announced in Schlup v. Delo, by demonstrating "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "Actual innocence" demonstrating a miscarriage of justice "means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (citation omitted). To make a credible claim of actual innocence, the petitioner must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

////

////

////

////

13

To establish the miscarriage of justice exception, a petitioner must show that in light of all the evidence, including new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, at 327.

In order to determine whether petitioner has met the miscarriage of justice exception, the court must review the entire record, i.e., the new evidence and the trial transcripts.[3] At this stage of the proceedings, it makes more sense for the court to defer ruling on whether petitioner has met the miscarriage of justice exception. Consideration of this issue is more appropriate once the merits of the petition are fully briefed and the entire record submitted.

Accordingly, respondent's motion to dismiss petitioner's Brady claim is denied without prejudice. Respondent may raise any arguments he wishes as to this claim in the answer.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (ECF No. 25) be denied for the reasons discussed above; respondent be ordered to file an answer to the petition within thirty days of the adoption of these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after

////

////

---

[3] The trial transcript is not yet in the court record.

14

service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 10, 2017

/s/ Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cr938.157