IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENZEL DEMAR CRISP,<br><br>               Petitioner,<br><br>vs.<br><br>PATRICK COVELLO, Warden, Mule<br>Creek State Prison,[1]<br><br>               Respondent. | No. 2:15-cv-00938-JKS<br><br>MEMORANDUM DECISION |

Denzel Demar Crisp, a state prisoner represented by counsel, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Crisp is in the custody of the

California Department of Corrections and Rehabilitation ("CDCR") and incarcerated at Mule

Creek State Prison. Respondent has answered, and Crisp has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 21, 2010, Crisp, along with Steven Brown Jr., was charged with multiple

crimes arising out of a drive-by shooting that occurred on or about December 18, 2009, when

Crisp was seventeen years old. Specifically, Crisp was charged with attempted murder (Count

1); discharging a firearm from a motor vehicle (Count 2); and assault with a deadly weapon

(Count 3). With respect to Counts 1 and 2, the information alleged that Crisp personally used a

firearm. The information further alleged with respect to Count 3 that Crisp personally used a

firearm and that he personally inflicted great bodily injury upon the victim. Crisp pled not

---

[1]     Patrick Covello, Warden, Mule Creek State Prison, is substituted for Dave Davey,
former Acting Warden, California State Prison, Corcoran. FED. R. CIV. P. 25(c).

guilty, denied the allegations, and proceeded to a jury trial on October 28, 2010.[2]  On direct

appeal of his conviction, the California Court of Appeal laid out the following facts underlying

the charges against Crisp and the evidence presented at trial:

On the night of December 18, 2009, defendants had difficulty finding a party hosted by Jennifer Ly.  Thinking they had found it, they walked up to a group of people standing outside a residence at what turned out to be a family 21st birthday party.  They were told there was no Jennifer at the party and they left.  One guest testified that Brown appeared to be "[a] little angry."  No one else, including defendants, testified there was any altercation, any unkind or agitated interaction, or any hard feelings.  Defendants were simply at the wrong party.

They got back in their car.  There is some dispute as to the route they then took, but they ended up in front of the same party with their lights off, and as the driver slowed down, witnesses saw an arm stick out of the passenger window and heard two or three gunshots.  Andrew Tapalla had just arrived at the party when he was shot in the buttocks.  Emergency personnel took him to the hospital, where he was given morphine to control the pain, but the bullet was not removed.  He missed four days of work.

Defendants fled the scene.  Shocked that Crisp had just fired a gun out of the window of his car, Brown testified he asked Crisp, "What the fuck are you doing?"  He did not know Crisp had fired into a group of people or that anyone had been hit.  He planned to take Crisp home.  Crisp, who testified that it was he who was shocked that Brown reached in front of him to shoot out of the passenger window, claimed they had no conversation at all.  Both defendants testified it was not their gun, they had never shot a gun before, and they did not shoot it at the group of partygoers after they left.

Several witnesses testified that someone fired the shots from the passenger side of a Ford Mustang.  At least two witnesses testified they saw an arm sticking out of the window, and one testified it was out at least as far as his elbow.

Brown pulled into a gasoline station with the police in hot pursuit.  He testified that after he parked he asked Crisp to hand him the gun because he was afraid of what Crisp would do with it.  He planned to turn it over to the police.  Although he testified he had never owned or used a gun before, he saw a small button on the bottom of the gun, depressed it, and removed the magazine.  But he then reloaded the gun, placed it in his waistband, and got out of the car.

A police officer testified that he asked Brown if he had a gun, and Brown shook his head to indicate he did not.  Brown denied the police officer had asked him.  Rather, according to Brown, the police officers threw him against a police car, banged his head into the car, and yelled at him.  In the process, the gun fell from his left pant leg to the

---

[2]  Crisp and Brown were jointly tried.  Crisp does not allege in his Petition that he requested that his trial be severed from Brown's or that such severance request was denied.

2

ground.  Officers found a .25–caliber spent cartridge casing fired by the gun retrieved from Brown in the space between the center console and the front passenger seat.

Crisp testified he did not know Brown was armed that night until he saw him pull a gun out of the pocket of his peacoat.  Because the night was so cold, he asked Brown if he could borrow some gloves.  He testified that he wore the gloves all night, including while he was texting Jennifer and his mother.

A criminalist testified that both Brown and Crisp tested positive for gunshot residue.  From the testing he conducted, the criminalist found more on Crisp's hand than on Brown's, but he did not do a complete reading of Brown's sample.  Based on the gunshot residue evidence, it could not be determined who had fired the gun.

*People v. Brown*, No. C067117, 2013 WL 5978681, at \*1-2 (Cal. Ct. App. Nov. 12, 2013).

At the conclusion of trial, the jury failed to reach a verdict on the attempted murder charge (Count 1), but found Crisp guilty of discharging a firearm from a motor vehicle (Count 2) and assault with a deadly weapon (Count 3), and also found true the related enhancement allegations.[3]  The trial court subsequently sentenced Crisp to an aggregate term of 30 years to life imprisonment.[4]

Through counsel, Crisp appealed his conviction, arguing that: 1) the trial court prejudicially erred in telling the jury that it could draw adverse inferences from Crisp's failure to explain or deny evidence against him; 2) the evidence of great bodily injury was legally insufficient to support the enhancement allegations; and 3) his sentence of 30 years to life imprisonment constituted cruel and unusual punishment.  The Court of Appeal unanimously affirmed the judgment against Crisp in a reasoned, unpublished decision issued on November 12,

---

[3]     Brown was found guilty of all three charges against him (assault with a deadly weapon [Count 3], knowingly permitting another person to discharge a firearm from a vehicle owned and driven by the defendant [Count 4], and carrying a firearm capable of being concealed without proper registration [Count 5].  The jury also found the related firearm enhancement to be true.

[4]     On the same day, the trial court sentenced Brown to an aggregate imprisonment term of 7 years and 8 months.

2013. *Brown*, 2013 WL 5978681, at *7.[5] The California Supreme Court summarily denied

review on January 29, 2014. Crisp's conviction became final on direct review 90 days later,

when his time to file a petition for certiorari in the U.S. Supreme Court expired on April 29,

2014. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796,

798 (9th Cir. 2003).

Crisp timely filed a counseled Petition for a Writ of Habeas Corpus to this Court on April

29, 2015. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A). After these federal proceedings were

stayed to allow Crisp to fully exhaust his claims in state court, Docket No. 7, Crisp filed an

Amended Petition (Docket No. 12, "Petition"), which is now before the undersigned judge for

adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Crisp argues: 1) his trial counsel provided

ineffective assistance in a variety of ways; 2) his sentence constitutes cruel and unusual

punishment; 3) the prosecutor failed to disclose material, exculpatory evidence in violation of

*Brady v. Maryland*, 373 U.S. 83 (1962); 4) the cumulative effect of the trial court's errors, the

*Brady* violation, and the ineffective assistance of trial counsel rendered the proceedings unfair

and unreliable; 5) appellate counsel was ineffective for failing to raise trial counsel's

ineffectiveness on direct appeal; and 6) he is actually innocent of the offenses for which he was

convicted and sentenced.

---

[5] Brown also filed a counseled appeal, raising other instructional error claims. The Court of Appeals unanimously affirmed the judgment against him as well. *Brown*, 2013 WL 5978681, at *7.

4

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.      *Ineffective Assistance of Counsel* (Grounds 1, 5)

Crisp first argues that his trial and appellate counsel were ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a

defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Crisp  must show that either his trial counsel's or his appellate counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of

counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Crisp first argues that trial counsel was ineffective for "failing to investigate, obtain, and introduce crucial expert opinion evidence," namely, an eyewitness testimony expert. In support of his Petition, Crisp attaches reports from two experts in the field of eyewitness testimony who explain that the memory can evolve and mutate over time and that stressful situations, particularly those that, like this one, involve weapons, affect the ability of eyewitnesses to notice peripheral details during a crime. Docket Nos. 12-10, 12-11.

The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government; 3) significantly weaken adverse Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony.

Here, however, Crisp fails to demonstrate that the now-proffered expert evidence would have been admissible if offered, or that it would have led to a different outcome in this case. As

the Court of Appeal explained, "a jury does not need an expert to understand that an unprovoked attack is a stressful event or that the passage of time affects a person's memory." Docket No. 15 at 311. The Court of Appeal's determination is both reasonable and in conformance with federal law. *See Howard v. Clark*, 608 F.3d 563, 573-74 (9th Cir. 2010) ("We have repeatedly affirmed district court decisions to exclude the testimony of eyewitness-identification experts from federal criminal trials. In reaching these decisions, we have made it clear that we 'adhere to the position that skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable.'") (citations omitted). The record fully supports that trial counsel deftly cross-examined the eyewitnesses regarding weaknesses in their testimony, obviating any need for eyewitness expert testimony.

Crisp likewise claims that trial counsel should have called at trial a firearms expert who counsel retained to help determine the location of the gun when the shots were fired. The record reflects that counsel indicated during opening that the expert would be called, but never called him as a witness. Crisp argues here, as he did on state habeas review, that Crisp's failure to do so constitutes ineffective assistance.

"'[I]n some cases—particularly cases where the promised witness was key to the defense theory of the case and where the witness's absence goes unexplained—a counsel's broken promise to produce the witness' may amount to prejudicial deficient performance." *Foster v. Oregon*, 587 F. App'x 356, 358 (9th Cir. 2014) (quoting *Saesee v. McDonald*, 725 F.3d 1045, 1049-50 (9th Cir. 2013)). Crisp fails to demonstrate that this is one of those cases. As the superior court reasonably concluded, the expert witness's testimony was not likely to have

affected the outcome of the case.  *See* Docket No. 15 at 313-22.  The record fully supports the superior court's rejection of this claim:

> [The firearms expert] apparently could have testified that based on the test firings, the firearm was most likely discharged from within the vehicle or slightly protruding from the passenger window, which could have been easily done by the driver or with a reasonable degree of difficulty by the passenger.  It appears that this opinion was based on one shell casing having been located inside the vehicle.  However, witnesses described hearing two or three gunshots, meaning that one or more shell casings fell outside the vehicle.  Nothing in Wells's opinion indicates that he considered this fact.  Moreover, although the People's expert testified that the casing found in the car was ejected from the firearm found on Brown, he could not determine when the casing was ejected.  Nothing in Wells's opinion indicates that he examined the casing, could date when the round was fired, or considered that the casing was not in fact from the shooting in this case.

*Id.*

Crisp also faults counsel for failing to investigate cell phone evidence that he claims would have corroborated his testimony that he was texting at the time of the shooting and thus could not have been the shooter.  The record reflects that his cell phone was taken during his arrest, and information was subsequently downloaded from it and stored on a CD.  Crisp claims that counsel should have obtained the information from the cell phone.  But because Crisp does not provide the information and, indeed, alleges that it no longer exists, *see* Ground 3, *infra*, he does not demonstrate that it contained exculpatory information, which is fatal to his claim.  *See Richter*, 562 U.S. at 111-12 (finding reasonable California Supreme Court's determination that petitioner failed to establish prejudice where the evidence presented showed nothing more than a "theoretical possibility" that a blood sample contained blood from not one but two persons).

Crisp additionally asserts that counsel failed to properly advise Crisp about the potential consequences of rejecting the prosecution's 15-year determinate sentence plea offer.  Specifically, Crisp contends that counsel failed to inform him of the mandatory nature of the

firearm enhancement, in other words, that the judge had no discretion in sentencing regarding the gun enhancement and was required to impose a mandatory 25 years to life sentence.[6]  The *Strickland* standard also applies to claims of ineffective assistance during the plea bargain process.  *See Lafler*, 132 S. Ct. at 1384 ("During plea negotiations, defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  Specifically, "a defendant has the right to make a reasonably informed decision whether to accept a plea offer."  *See Turner*, 281 F.3d at 880 (citation omitted).  Here, however, even assuming that counsel did not explicitly inform Crisp about the mandatory nature of the firearm enhancement, Crisp fails to show that he was prejudiced by the omission.  The record indisputably demonstrates that Crisp was informed, prior to trial, that he was facing a life sentence if he was convicted and the gun enhancement were found true.  Docket No. 12-1 at 1-2.  It was therefore not unreasonable for the state courts to reject the claim based on the record and without holding an evidentiary hearing.

   Crisp additionally claims that trial counsel's opening statement was deficient in a number of ways.  Crisp primarily attacks the opening statements on grounds that counsel conceded Crisp's involvement in the shooting and other factual issues by not sufficiently distinguishing between Crisp and co-defendant Brown.  In support of that contention, Crisp notes that counsel repeatedly referred to both defendants collectively as "they" when laying out the facts and at one point mistakenly mixed up their names during opening statement.  Crisp fails to show, however,

---

   [6]    *See* CAL. PENAL CODE § 12022.53(d) (any person who, in the commission of certain enumerated offenses, "personally and intentionally discharges a firearm and proximately causes great bodily injury . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life").

that such statements were so deficient as to undermine the entire adversarial process or that, had

counsel individually referred to the defendants or not made the misstatement, the outcome would

have been different.  Crisp also faults counsel for failing to articulate a theory of defense in

opening.  The record shows, however, that counsel stated at the end of opening that "Brown shot

the gun, not Crisp."  Although Crisp contends that the ultimate defense theory should have been

stated earlier, he similarly cannot show that such action would have led to a different verdict.

Crisp next argues that trial counsel provided ineffective assistance for failing to persuade

the trial court to admit the testimony of Ogden Shipman to impeach Brown with out-of-court

statements regarding his possession of and familiarity with guns, as well as his untruthful

character.  The superior court considered and rejected this claim on habeas review as follows:

> Petitioner suggests that [counsel] should have argued that Shipman's statements
> were admissible as party statements, for impeachment, and as statements against penal
> interest.  However, the trial court stated that it would exclude the evidence regarding the
> burglary under Evidence Code section 352 as it would cause confusion and undue
> consumption of time.  This assumes that the evidence was admissible; therefore,
> additional arguments that the statement was admissible would not have affected the
> ruling.  It appears that the trial court excluded the impeaching statements, pending
> Brown's testimony.  After Brown testified, [counsel] could have renewed the effort to
> admit Shipman's statements to impeach Brown.  However, his failure to do so could have
> been a tactical decision.  Moreover, Petitioner has not shown that the failure to admit the
> evidence was prejudicial.  While Petitioner contends that Shipman's proposed testimony
> was "crucial," it would merely have impeached Brown.  Much of Brown's testimony was
> already impeached, including his implausible story explaining his fingerprint on the
> gun's magazine, his denial to police that he had a gun, his claim that police slammed his
> head against the car, etc.  In addition, the impeachment of Brown would not necessarily
> have helped Petitioner's case.  Irrespective of Brown's testimony, the prosecutor's
> witnesses testified that the gun came from the passenger side window, where Petitioner
> had been sitting.  Two witnesses indicated that part of the shooter's arm was outside the
> window, suggesting that the passenger (Petitioner) was the shooter.  Petitioner's hands
> tested positive for gunshot residue despite his claim that he wore gloves that night.  The
> prosecutor's theory was that Petitioner was the shooter.  The jurors could have
> disbelieved Brown's testimony entirely and still likely would have come to the same
> conclusion.  Therefore, Petitioner has not shown that counsel was ineffective for failing
> to introduce Shipman's testimony.

Docket No. 15 at 314.

That conclusion is both reasonable and fully supported by the record, and thus relief is precluded here.

Crisp next alleges that counsel was ineffective for failing to adequately prepare Crisp to testify at trial. But even assuming *arguendo* that counsel failed to adequately prepare him, Crisp fails to demonstrate prejudice. As the superior court reasoned in rejecting this claim on habeas review, "Despite any amount of preparation, Petitioner still would have to admit that he initially lied during the police interview. At most, [counsel] could have *lessened*, but not erased, the impact of Petitioner's admission. Certainly, it would not have prevented either the prosecutor or Brown's counsel from commenting on or arguing to the jury about Petitioner's dishonesty." Docket No. 15 at 316. That conclusion is likewise both reasonable and fully supported by the record. *See also United States v. Ray*, 735 F. App'x 290 (9th Cir. 2018) (even if defense counsel was deficient in preparing defendant to testify at trial, defendant not prejudiced by deficiency where there was ample evidence to support conviction regardless of whether defendant had chosen not to testify or had testified differently).[7]

Crisp also contends that counsel rendered ineffective assistance during closing argument for a variety of reasons. An independent review of counsel's closing argument, however, fully supports the superior court's reasonable conclusion on federal habeas review that "[n]one of the 14 alleged errors Petitioner identifies overcomes the strong presumption that counsel's actions were part of a sound trial strategy. . . . As Petitioner has failed to show a reasonable probability

---

[7]     Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

that a better argument would have resulted in a more favorable verdict, he has not shown that counsel was ineffective."

Crisp additionally claims that counsel was ineffective for failing to ask the trial court to present Crisp's case and closing argument after Brown's. The sole authority to control the order of the proceedings, however, was vested with the superior court, not the parties. *See* CAL. PENAL CODE § 1044 ("It shall be the duty of the judge to control all proceedings during the trial . . . ."). Accordingly, Crisp fails to show prejudice because he does not demonstrate that a request to change the order of proceedings would have been granted. Similarly, he does not provide a sufficient basis to believe that a change in the order of proceedings would have rendered a different verdict in his case.

Crisp also argues that trial counsel ineffectively argued that Crisp's sentence violated the protections against cruel and unusual punishment. But the state courts concluded that Crisp's sentence did not constitute cruel and unusual punishment under California constitutional safeguards. This Court is bound by that determination. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT & T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). A determination of state law by a state intermediate appellate court is also binding in a federal habeas action. *See Hicks v. Feiock*, 485 U.S. 624, 629–30 & n. 3 (1988) (noting that state appellate court's determination of state law is binding and must be given deference). Crisp thus fails to show that any other argument by

14

counsel would have been persuasive. Likewise, because this Court has determined that the federal constitutional protection against cruel and unusual punishment was not violated, Crisp fails to show that counsel could have prevailed on the claim in state court either even if he had articulated it differently. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

Crisp relatedly contends in Ground 5 that appellate counsel was ineffective for failing to raise on direct appeal that trial counsel was ineffective in arguing that Crisp's sentence violated the protections against cruel and unusual punishment. As discussed above, however, Crisp fails to show that trial counsel was ineffective with respect to that argument, and thus appellate counsel cannot be faulted for not raising the claim on direct appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (appellate counsel is not under "a duty to raise every 'colorable' claim suggested by a client"). Moreover, because the argument was considered and rejected on state habeas, Crisp cannot show that he was prejudiced by appellate counsel's omission on direct appeal.

Finally, Crisp avers that the state court's failure on state habeas review to issue an order to show cause as to his ineffective assistance claims when he purportedly established a prima facie case for relief renders the state court decision objectively unreasonable. Such claim is not cognizable on federal habeas review, however, because it pertains only to matters that occurred in the post-conviction review process. *See Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam) ("[A] petition alleging errors

in the state post-conviction review process is not addressable through habeas corpus

proceedings."). Moreover, the alleged failure to issue an order to show cause presents only an

alleged violation of a state law requirement[8] that likewise is not a valid ground for federal habeas

relief. In sum, Crisp is not entitled to relief on any argument advanced in support of his

ineffective assistance of counsel claim in Ground 1.

B.      *Cruel and Unusual Punishment* (Ground 2)

Crisp next contends, as he did on direct appeal, that his sentence constitutes cruel and

unusual punishment under the Eighth and Fourteenth Amendments. In support of this claim,

Crisp stresses that he was 17 years old and had no prior offenses when he shot the victim, who

"was merely treated and released from the hospital and lost only three or four . . . days [of]

work." Petition at 174. As he did on direct appeal:

> Crisp repeats many of the compelling factual and legal arguments he made at
> sentencing. Witnesses at trial had attested to his character as a polite, conscientious
> student, whom they had never known to cause trouble, react in anger, or show any sort of
> temper. Defense counsel's statement in mitigation contained numerous letters on his
> behalf from family members, family friends, teachers, and clergy. Moreover, he
> demonstrated exemplary conduct in juvenile hall, obtained his high school diploma, and
> continued to take college courses. He certainly did not fit the profile of a typical young
> gangster.

*Brown*, 2013 WL 5978681, at *6.

The Eighth Amendment, applicable to the States through the Fourteenth Amendment,

proscribes the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *Kennedy*

---

[8]     Rule 4.551 of the California Rules of Court provides that, in habeas corpus
proceedings, "[t]he court must issue an order to show cause if the petitioner has made a prima
facie showing that he or she is entitled to relief. In doing so, the court takes petitioner's factual
allegations as true and makes a preliminary assessment regarding whether the petitioner would
be entitled to relief if his or her factual allegations were proved. If so, the court must issue an
order to show cause."

*v. Louisiana*, 554 U.S. 407, 419 (2008). The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted). In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history, a process similar to the three-pronged approach employed by California state courts. *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

Within the last several years, the United States Supreme Court has considered a number of Eighth Amendment cases involving juvenile offenders, that is, defendants who were under the age of 18 at the time they committed their offenses. *See, e.g., Miller v. Alabama*, 567 U.S. 460, 476-77 (2012) (holding that it is unconstitutional to sentence a juvenile to life without possibility of parole in a capital case); *Graham v. Florida*, 560 U.S. 48, 75 (2010) (holding that it is unconstitutional to sentence juvenile offender to life without possibility of parole in a non-capital case); *Roper v. Simmons*, 543 U.S. 551, 575 (2005) (holding that death sentence for juveniles under the age of 18 is unconstitutional). The Supreme Court's recent jurisprudence regarding juveniles does not, however, warrant granting Crisp relief here because he was not sentenced to the death penalty or life without parole and thus his sentence, which includes the possibility of life imprisonment, does not run afoul of existing Supreme Court authority.

Crisp argues that his sentence is unfair and disproportionate to the offense because, if he had killed Tappala under circumstances amounting to involuntary manslaughter, he would have faced only a 3-, 6-, or 11-year sentence. *Id* at 176 (citing CAL. PEN. CODE § 193(a)). Likewise,

Crisp refers to the sentences he would have faced if his offense had been committed in every other state, and notes that he could have received a life sentence only in one other state, Washington. *Id.* at 177. However, in light of the applicable United States Supreme Court authority, it was not unreasonable for the state court to conclude that neither the victim's recovery nor Crisp's attributes and age at the time of the offense rendered Crisp's sentence disproportionate to his crimes. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual).

Crisp reasserts his direct appeal argument that his 30 years to life sentence may be tantamount to a mandatory life sentence within the meaning of *Graham* and *Miller*. The CDCR's inmate locator system, however, indicates that Crisp is eligible for parole in December 2033. *See* https://inmatelocator.cdcr.ca.gov/ (CDCR Number AG1029). It was therefore reasonable for the Court of Appeal to reject Crisp's de facto life sentence argument because "Crisp, unlike his counterparts in [*Graham* and *Miller*], will have a meaningful opportunity in the future to demonstrate his rehabilitation and his fitness to reenter society." *Brown*, 2013 WL 5978681 at *7.

Although the length of Crisp's sentence certainly gives this Court pause, in light of the deference that must be afforded the Court of Appeal's determination on federal habeas review, Crisp cannot demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime committed. *Lockyer*, 538 U.S. at 72-73. Indeed, in light of AEDPA deference, this Court's review is even

more limited than the "exceedingly narrow" review undertaken by the Court of Appeal, which was thoroughly explained on direct appeal:

> [W]e must remind him that we are neither the Legislature nor the sentencing court. "[I]n our tripartite system of government it is the function of the legislative branch to define crimes and prescribe punishments, and . . . such questions are in the first instance for the judgment of the Legislature alone. [Citations.]" The trial court presided over the trial and heard all the witnesses testify, including those who spoke on behalf of Crisp.
>
> Thus, we cannot supplant a sentence authorized by the Legislature and applied by the court with our own notion of what Crisp deserves or whether this sentence is a disservice to his community and society at large. Our role is exceedingly narrow in determining whether the 30–years–to–life term is grossly disproportionate, shocks the conscience, or offends fundamental notions of human dignity. With those concepts as the bar, we simply cannot say that a lengthy sentence for a drive-by shooter, who but for grace or luck or divine intervention could have killed the victim or others standing nearby, is cruel and unusual punishment. Indeed, the victim was shot, suffered pain, required medication, and missed work. We reject Crisp's invitation to find his sentence grossly disproportionate because his victim recovered and thereby to benefit him because his victim was lucky enough to survive. Crisp fails to sustain his considerably heavy burden.

*Brown*, 2013 WL 5978681, at *7 (citation omitted).

Although Crisp's sentence is undeniably severe, the Court cannot say that the Court of Appeal's rejection of his cruel and unusual punishment claim was either unreasonable or contrary to federal law. Crisp is therefore not entitled to federal habeas relief on his cruel and unusual punishment claim either.

C.     *Brady Violation* (Ground 3)

Crisp additionally argues that the prosecution violated his due process rights by failing to disclose the records police downloaded from the cell phone he was carrying at his arrest. Crisp raised this claim in habeas petitions filed in the Court of Appeal and Supreme Court, both of which were summarily denied.

*Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Id.* at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Crisp fails to establish a *Brady* violation here. In support of his claim, Crisp provides as an exhibit a police report indicating that his cell phone was taken, and information was downloaded from it and stored on a CD. Docket No. 12-20. The report indicates that the cell phone was subsequently returned to Crisp. *Id.* Crisp does not show, however, that prosecution actually suppressed the CD because there is no allegation that the defense ever requested it. In his Traverse, Crisp chastises the prosecution for "not provid[ing] the records unilaterally." Docket No. 55 at 46. It is well-settled, however, that "the Constitution does not require the prosecutor to share all useful information with the defendant." *United States v. Ruiz*, 536 U.S.

622, 629 (2002) (citing *Weatherford v. Bursey*, 429 U.S. 545, 549 (1977) ("There is no general constitutional right to discovery in a criminal case.").

Crisp also claims that "the contents of [the cell phone records] are unknowable" such that he cannot be faulted for failing to show that the evidence was exculpatory or material. Docket No. 55 at 46. But, as Respondent points out in its Answer, there is no indication in the record that, when the information was downloaded, it was also erased from the phone. Docket No. 46 at 56. Crisp does not dispute on reply Respondent's presumption that the information was available on the phone that was returned to Crisp. The state courts thus reasonably concluded that Crisp failed to show prejudice and materiality sufficient to establish a *Brady* violation. Accordingly, Crisp is not entitled to federal habeas relief on this ground.

D.      *Cumulative Error* (Ground 4)

Crisp further contends, as he did by habeas petitions to the Court of Appeal and Supreme Court, that the cumulative effect of the errors enumerated in Grounds 1 through 3, *supra*, warrant reversal of his conviction. The Ninth Circuit has stated "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000). "Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)). Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error

review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)).

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness." *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers*, 410 U.S. at 298, 302-03). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted). In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 410 U.S. at 294.

As discussed throughout this opinion, Crisp does not demonstrate federal constitutional errors that would establish prejudice in the aggregate. *See, e.g.*, *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."). Crisp is therefore not entitled to relief on this claim.

E.    *Actual Innocence* (Ground 6)

Finally, Crisp claims that he is actually innocent of the crime. Although the Ninth Circuit has not "resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context," it has "assumed that such a claim is viable." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (citations omitted). This Court

therefore assumes that a freestanding actual innocence claim is cognizable on federal habeas review.

Although the Ninth Circuit has not "articulated the precise" standard to establish a "freestanding actual innocence claim," *id.* at 1247, it has called the standard "extraordinarily high," *id.* at 1246 (citations and internal quotation marks omitted). "[A]t a minimum, the petitioner must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Id.* (citations and internal quotation marks omitted). Indeed, both the Supreme Court and the Ninth Circuit have rejected freestanding actual innocence claims in the face of compelling new evidence where the new evidence did not "'conclusive[ly] exonerat[e]'" the petitioner or "'preclude any possibility of [the petitioner's] guilt.'" *Id.* at 1247-48 (quoting *House v. Bell*, 547 U.S. 518, 555 (2006) and *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1997)).

In his Petition, Crisp asserts that "he is actually innocent of the offenses of conviction and sentencing enhancements found true by jury trial." Petition at 165. However, he cites no new facts or evidence in support of that claim. Rather, he appears to rely on previously-raised inconsistencies and weaknesses in the evidence and alleged shortcomings of his attorney. Indeed, Crisp's actual innocence argument appears to be based on the trial court record. Thus, Petitioner fails to meet the standard enumerated in *Schlup v. Delo*, 513 U.S. 298, 324 (1995), which requires "new reliable evidence . . . that was not presented at trial" as the basis for an actual innocence claim. Moreover, the evidentiary weaknesses and ineffective assistance argued by Crisp at best demonstrate legal insufficiency, rather than factual innocence, which is wholly insufficient to show actual innocence. *See Bousley v. United States*, 523 U.S. 614, 623 (1998)

("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). The state courts' rejection of Crisp's actual innocence claim was therefore neither unreasonable nor contrary to federal law, and he is not entitled to relief on this ground.

F.    *Evidentiary Hearing*

Crisp requests in his Traverse an evidentiary hearing as to all claims. A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963). *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005). In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material

facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superseded by statute as stated in Williams v. Taylor*, 529 U.S. 420 (2000).

As discussed above, Crisp has failed to assert a colorable claim for relief. *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record). Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2). Crisp's request for an evidentiary hearing must therefore also be denied.

## V. CONCLUSION AND ORDER

Crisp is not entitled to relief on any ground raised in his Petition, and his claims do not warrant an evidentiary hearing in this Court.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 24, 2019.

    /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
